UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| BRIAN O'DAY, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 3:17-CV-952-JD |
| | ) |
| ALLY FINANCIAL INC., *et al.*, | ) |
| | ) |
| Defendants. | ) |

## OPINION AND ORDER

This case arises from the repossession of Plaintiff Brian O'Day's Hummer H2 sport utility vehicle by Defendants Ally Financial Inc., UAR Direct LLC, Tri-Force Inc., and four repo men identified as John Does 1-4 (collectively, the "Defendants"). Mr. O'Day alleges several claims, but relevant here, is the assertion that Defendants violated Mr. O'Day's Fourth Amendment rights under 42 U.S.C. § 1983 by unlawfully taking his vehicle with the assistance of law enforcement officers. Defendants[1] now move to dismiss the § 1983 claim under Federal Rule of Civil Procedure 12(b)(6) for failing to state a claim upon which relief can be granted. The motion has been briefed and is ripe for ruling. [DE's 14, 15, 19, 27, 28, 29].

## I. STANDARD OF REVIEW

Federal Rule of Civil Procedure 12(b)(6) authorizes dismissal of a complaint when it fails to set forth a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). When considering a Rule 12(b)(6) motion to dismiss, the court must decide whether the complaint satisfies the "notice-pleading" standard. *Indep. Trust Corp. v. Stewart Info. Servs. Corp.*, 665 F.3d 930, 934 (7th Cir. 2012). The notice-pleading standard requires that a complaint provide a "short and plain

---

[1] The Court GRANTS Defendant Ally Financial Inc.'s uncontested request to join the motion to dismiss.

statement of the claim showing that the pleader is entitled to relief," sufficient to provide "fair notice" of the claim and its basis. *Id.* (citing Fed. R. Civ. P. 8(a)(2)); *Maddox v. Love*, 655 F.3d 709, 718 (7th Cir. 2011) (internal citations omitted); *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting Fed. R. Civ. P. 8(a)(2)). In determining the sufficiency of a claim, the Court construes the complaint in the light most favorable to the nonmoving party, accepts all well-pleaded facts as true, and draws all inferences in the nonmoving party's favor. *Reynolds v. CB Sports Bar, Inc.*, 623 F.3d 1143, 1146 (7th Cir. 2010) (internal citations omitted).

The Supreme Court has adopted a two-pronged approach when considering a Rule 12(b)(6) motion to dismiss. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009). First, pleadings consisting of no more than mere conclusions are not entitled to the assumption of truth. *Id*. This includes legal conclusions couched as factual allegations, as well as "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Id.* at 678 (citing *Twombly*, 550 U.S. at 555). Second, if well-pleaded factual allegations are present in the complaint, courts should "assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id*. at 679.

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. The complaint "must actually suggest that the plaintiff has a right to relief, by providing allegations that raise a right to relief above the speculative level." *Maddox*, 655 F.3d at 718 (internal citations omitted). A plaintiff's claim, however, need only be plausible, not probable. *Indep. Trust Corp.*, 665 F.3d at 934 (quoting *Twombly*, 550 U.S. at 556). "[A] well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and that a recovery is very remote and unlikely." *Id*. In order to satisfy the

plausibility standard, a plaintiff's complaint must supply "enough facts to raise a reasonable expectation that discovery will yield evidence supporting the plaintiff's allegations." *Twombly*, 550 U.S. at 556. Determining whether a complaint states a plausible claim for relief is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679 (internal citations omitted). Factual allegations, however, "that are merely consistent with a defendant's liability . . . stop[] short of the line between possibility and plausibility of entitlement to relief." *Id.* at 678.

## II. FACTS

The allegations in the complaint indicate that Mr. O'Day purchased a used 2008 Hummer H2 on August 15, 2011, from Martin Buick Pontiac GMC for $32,000. [DE 1 ¶ 17]. The retail contract and security agreement between Mr. O'Day and Martin Buick Pontiac GMC was assigned to Ally Financial Inc.[2] [DE 1 ¶¶ 18-19]. Mr. O'Day missed payments and became in default under the terms of the contract. [DE 1 ¶ 21]. Ally Financial Inc. contracted with UAR Direct LLC to repossess the Hummer, who then contracted with Tri-Force Inc. to take such action. [DE 1 ¶¶ 22-23].

In the evening hours of October 30, 2017, four individuals working as repo men for Tri-Force Inc. went to Mr. O'Day's apartment to repossess the Hummer from his attached garage. [DE 1 ¶¶ 24-26]. At approximately 8:30 p.m., Racheal Selman, who lived with Mr. O'Day at the time, went to close the overhead garage door, but the repo men prevented the door from closing. [DE 1 ¶ 27]. After the repo men failed to produce identifying documentation, a physical altercation ensued between Mr. O'Day and the repo men (during which Mr. O'Day was injured).

---

[2] The contract was attached to the complaint and indicated that upon default, the creditor could enter the property where the vehicle is stored and repossess the vehicle, so long as it was done peacefully. [DE 1-1 at 3].

[DE 1 at ¶¶ 28-35, 46]. Thus, Mr. O'Day had Ms. Selman call 911. [DE 1 ¶ 36]. When officers from the Mishawaka Police Department arrived, they had everyone vacate the garage. [DE 1 ¶ 41]. The police officers then made Mr. O'Day pull the car out of the garage and hand the keys over to the repo men. [DE 1 ¶ 42]. Because Mr. O'Day did not think that he could resist the officers' instructions, the Hummer was seized by the Defendants "in the presence of and with the active cooperation and assistance of a law enforcement officer." [DE 1 ¶¶ 43, 45]. Eventually, Mr. O'Day paid-off the loan and regained possession of his vehicle. [DE 1 ¶ 47].

### III. ANALYSIS

At issue here is Mr. O'Day's claim against Defendants pursuant to 42 U.S.C. § 1983. To establish a section 1983 action, the plaintiff must show: (1) that the defendant deprived him of a right secured by the "Constitution and laws" of the United States; and (2) that the defendant deprived him of this constitutional right "under color of law." *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 150 (1970). The unlawful seizure of property is a violation of the Fourth Amendment, *see Soldal v. Cook Cty., Ill.*, 506 U.S. 56 (1992), and the parties' briefs make clear that the only issue raised for the Court's determination at this time is whether Mr. O'Day has adequately alleged that Defendants were acting under color of law.[3]

With that said, the law is well-settled that a private person who acts under the color of state law may be subject to liability under § 1983. *Apostol v. Landau*, 957 F.2d 339, 343 (7th Cir. 1992) (citing *Dennis v. Sparks*, 449 U.S. 24, 27 (1980); *Del's Big Saver Foods, Inc. v. Carpenter Cook, Inc.*, 795 F.2d 1344, 1346 (7th Cir. 1986); *Malak v. Associated Physicians Inc.*, 784 F.2d 277, 281 (7th Cir. 1986); *Greco v. Guss*, 775 F.2d 161 (7th Cir. 1985)). Generally, the private use of state-sanctioned remedies will not rise to the level of state action. *Id.* (citing *Edmonson v.*

---

[3] The parties also did not address the availability or adequacy of any post-deprivation remedies.

*Leesville Concrete Co.*, 500 U.S. 614 (1991)). However, state action will be found when private parties make extensive use of state procedures with "the overt, significant assistance of state officials." *Id.* (citing *Tulsa Professional Collection Services v. Pope*, 485 U.S. 478, 486 (1988); *Lugar v. Edmondson Oil Co.*, 457 U.S. 922 (1982); *Sniadach v. Family Finance Corp.*, 395 U.S. 337 (1969)). As the Seventh Circuit pointed out in *Greco v. Guss*, "[t]hus, even if a private party misuses a state statute,[4] the deprivation can still be under color of state law if the authority of state officials puts the weight of the State behind the private decision." 775 F.2d at 167. Accordingly, Mr. O'Day may successfully assert a § 1983 claim against the private Defendants if he sufficiently asserts that the officers provided a level of assistance sufficient to bring the Defendants' conduct under the rubric of state action.

At one end of the spectrum are situations involving *de minimis* intervention not amounting to state action, such as the guise of an officer at the scene, *see Fleming-Dudley v. Legal Investigations, Inc.,* No. 05 C 4648, 2007 WL 952026 (N.D. Ill. Mar. 22, 2007), or situations involving an officer's attempt to maintain the peace rather than affirmatively intervene, *see Hershberger v. Kline*, No. 1:09-CV-198-TS, 2011 WL 781396, at *1 (N.D. Ind. Mar. 1, 2011). *See also Marcus v. McCollum*, 394 F.3d 813 (10th Cir. 2004) (noting that because a self-help repossession must not breach the peace, officers can diffuse a volatile situation while

---

[4] While neither party discusses Indiana's self-help remedy of repossession, under Indiana law, a secured party may take possession of collateral after a default "without judicial process, if it proceeds without breach of the peace." Ind. Code § 26–1–9.1–609(b); *see Allen v. First Nat. Bank of Monterey*, 845 N.E.2d 1082, 1085-86 (Ind. Ct. App. 2006). However, if the repossession of the collateral is contested "verbally or otherwise" at the actual time of and in the vicinity of the attempted repossession by the defaulting party or another person in control of the chattel, the secured party must desist and pursue [a] remedy in court." *Id.* (quoting *Census Fed. Credit Union v. Wann*, 403 N.E.2d 348, 352 (Ind. Ct. App. 1980)). Moreover, this section does not authorize secured parties to use law enforcement officers to collect collateral without judicial process. Official Comment 3 to Ind. Code § 26–1–9.1–609.

ensuring lack of state action if they direct both parties to seek a judicial determination, but that a "curbside courtroom, in which officers decide who was entitled to possession is precisely the situation and deprivation of rights to be avoided") (quotation marks omitted).

After considering the facts in the light most favorable to Mr. O'Day, the Court finds that dismissal at this stage is improper. The complaint in this case alleges that the officers did more than act only to keep the peace; rather, despite Mr. O'Day's resistance, the officers "forced" Mr. O'Day to relinquish his vehicle, which he would not have done absent the officers' affirmative intervention. Accordingly, the level of participation by the officers, though seemingly minimal, raises a question of fact sufficient to allow the action against Defendants to go forward. *See, e.g., Harris v. City of Roseburg,* 664 F.2d 1121, 1127 (9th Cir. 1981) ("police intervention and aid in the repossession does constitute state action" and factual questions precluded the entry of summary judgment). And it matters not (as the defense contends) that Mr. O'Day had the police called to the scene. *See, e.g., Johnson v. City of Evanston, Ill.*, 250 F.3d 560 (7th Cir. 2001). Whether or not Mr. O'Day will ultimately succeed on his § 1983 claim remains to be seen, for discovery lies ahead, but for now dismissal is not warranted under the limited grounds asserted.

## IV. CONCLUSION

Consistent with the above analysis, the Court DENIES the Defendants' motion to dismiss [DE 14; DE 19] the claim alleged pursuant to 42 U.S.C. § 1983 (that is, count B of the complaint).

SO ORDERED.

ENTERED: June 20, 2018

                                        /s/ JON E. DEGUILIO
                                        Judge
                                        United States District Court